IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LEONARD PAUL JARMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 9:15-cv-00356-DCN |
| vs. | ) |
| | ) **ORDER** |
| BEAUFORT-JASPER WATER & SEWER | ) |
| AUTHORITY and DUPRIEST | ) |
| CONSTRUCTION, INC., | ) |
| | ) |
| Defendants. | ) |
| | ) |

The following matter is before the court on defendant DuPriest Construction Inc.'s ("DuPriest") motion to dismiss or in the alternative for summary judgment, ECF No. 46. For the reasons set forth below, the court grants the motion and dismisses plaintiff Leonard Paul Jarman's ("Jarman") claims with prejudice.

## I. BACKGROUND

This case stems from an accident that occurred on the site of a construction project on Parris Island, South Carolina, a federal enclave. Beaufort-Jasper Water & Sewer Authority ("BJWSA") contracted with DuPriest Construction, Inc. ("DuPriest"), a construction company specializing in water, sewer, and storm drain installation, to perform work on the ISM Group II Sewer Project on Parris Island. The contract between BJWSA and DuPriest required DuPriest to install a new gravity sewer line, a portion of which was to run underneath a roadway. To avoid disrupting the roadway traffic, the government required BJWSA—and therefore DuPriest as the contractor—to bore underneath the roadway to install a sewer line using the "jack and

1

bore" drilling method.[1] DuPriest in turn hired Razorback Boring, Inc. ("Razorback"), a subcontractor, to perform the boring work.[2]

Leonard Paul Jarman ("Jarman"), a direct employee of Razorback, was injured while working on the ISM Group II Sewer Project. Jarman filed suit against BJWSA and DuPriest, alleging a number of common law tort claims including negligence, premises liability, and breach of warranties.[3] BJWSA and DuPriest removed the case on January 26, 2015, asserting that the court had concurrent jurisdiction over the matter because the accident occurred on federal property.

DuPriest filed a motion to dismiss or in the alternative for summary judgment on January 14, 2016, ECF No. 20, and the court held a hearing on June 8, 2016. During the hearing, the court focused on the threshold issue of whether the court had subject matter jurisdiction to hear Jarman's common law tort claims, or if Jarman was a "statutory employee" under the South Carolina Workers' Compensation Act ("SCWCA") such that workers' compensation was the exclusive remedy. The court ordered the parties to conduct jurisdictional discovery to assist with the subject matter jurisdiction inquiry. ECF No. 39. Having now completed jurisdictional discovery, DuPriest once again brings a motion to dismiss for lack of subject matter jurisdiction

---

[1] The terms "boring," "tunneling method," and "jack and bore drilling" are used somewhat interchangeably throughout DuPriest's motion. The court uses the term "boring" for consistency.

[2] The relationship of the companies involved in this project, as the court understands it, is that the government contracted with BJWSA to complete the ISM Group II Sewer Project. BJWSA then subcontracted with DuPriest, which in turn, subcontracted with Razorback to complete the boring work. Jarman was an employee of Razorback. ECF No. 47 at 21.

[3] At the time that he filed this suit, Jarman had already collected worker's compensation under the South Carolina Worker's Compensation Act ("SCWCA") from Razorback.

before the court. Jarman filed a response on November 21, 2016. The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

### A.  Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for "lack of subject-matter jurisdiction." The determination of subject matter jurisdiction must be made at the outset before any determination on the merits. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff cannot overcome this burden, the claim must be dismissed. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). In ruling on a Rule 12(b)(1) motion, "the court may consider exhibits outside the pleadings" and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williams, 50 F.3d at 304 (internal citations and quotations omitted).

### B.  Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247–48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

The sole issue before this court is whether Jarman is a statutory employee of DuPriest such that he is barred from bringing any claims in this court. DuPriest argues that Jarman is a statutory employee of DuPriest, and so his exclusive remedy is through the SCWCA. Def.'s Mot. 2. Jarman contends that he is not a statutory employee of DuPriest, and the court continues to have subject-matter jurisdiction over his common law claims. Pl.'s Resp. 1. The court agrees with DuPriest, and grants the motion to dismiss.

The SCWCA is the exclusive remedy against an employer for an employee's work-related accident or injury. Fuller v. Blanchard, 595 S.E.2d 831, 832 (S.C. Ct. App. 2004). When determining whether a worker is a statutory employee under the SWCA, courts are to ask three questions: "(1) Is the activity an important part of the owner's business or trade; (2) Is the activity a necessary, essential, and integral part of the owner's trade, business or occupation; or (3) Has the identical activity previously

been performed by the owner's employees." Edens v. Bellini, 597 S.E.2d 863, 867 (S.C. Ct. App. 2004). To qualify as a statutory employee, the activity needs to meet just one of the three tests outlined in Edens. Id. at 868. Any jurisdictional doubts as to whether an employee is a statutory employee are to be resolved "in favor of inclusion" under the SCWCA. Id. at 867.

Here, DuPriest asserts that the first test outlined in Edens is satisfied because the boring activity that Jarman was doing at the time of his accident was an important part of DuPriest's business. While the original scope of DuPriest's work on the ISM Group II Sewer Project only required DuPriest to install a new gravity sewer line, after BJWSA contracted with DuPriest the government determined that a section of the gravity sewer line needed to be installed via tunneling so that the overlying road could be preserved. Def.'s Mot. 22. In response, BJWSA issued Change Order #4, dated July 17, 2012, requiring DuPriest to install a portion of the gravity sewer line by boring under the road. Def.'s Mot., Ex. G, Change Order #4. In support of its argument that the boring work is an important part of its business, DuPriest cites to the affidavit of DuPriest manager George F. Emminger ("Emminger") which states that over the course of its thirty-year history as a water, sewer and storm drain installation company, DuPriest performed "numerous projects" that required boring to complete the job. Def.'s Mot., Ex. 2, Emminger Affidavit ¶ 6. Emminger also testifies that Razorback's boring work allowed DuPriest to install the gravity sewer line as required by its contract with BJWSA, and so Razorback's work was "critical" to DuPriest completing the ISM Group II Sewer Project. Id. at ¶ 9. Indeed, during his deposition, Emminger estimated that approximately 35% of the jobs that DuPriest

was awarded required DuPriest to carry out tunneling work, and that DuPriest would have both lost out on significant parts of business and suffered reputation loss if it had been unable to perform the contracts that required tunneling. Def.'s Mot. 25.

DuPriest also cites to the deposition testimony of Brian Chemsak, Director of Engineering at BJWSA, who says that if DuPriest had not been able to install the gravity sewer line using the boring method, then DuPriest would have been in breach of its contract with BJWSA. Def.'s Mot. 27. The court is convinced by the Emminger and Chemsak deposition testimony that Jarman's work at Razorback was indeed an important part of DuPriest's business. If DuPriest had not subcontracted with Razorback to bore underneath a portion of the overlying road and install steel casing through which DuPriest could ultimately install the gravity sewer line, DuPriest would have breached its contract with BJWSA. In the ISM Group II Sewer Project, BJWSA instructed DuPriest to carry out the boring work and, via Change Order #4, specifically incorporated it into the contractual requirements. Considering that 35% of DuPriest's contracts required DuPriest to carry out some sort of boring work, the court finds that the boring work Jarman was engaged in at the time of his accident was an important part of DuPriest's overall business.

Keeping in mind that South Carolina courts have broadly construed the SCWCA and determined that any doubts about whether an employee is a statutory employee should be resolved in favor of including the employee under the SCWCA, and since the evidence demonstrates that boring work was essential to DuPriest's business of installing sewer lines underneath roadways without disrupting traffic, the

court finds that Jarman is a statutory worker of DuPriest under the Edens test.[4] Accordingly, the court finds that Jarman's exclusive remedy is workers' compensation under the SCWCA and the court does not have subject matter jurisdiction over this matter.

## IV. CONCLUSION

For the reasons set forth above, the court grants DuPriest's motion and dismisses Jarman's claims with prejudice.

**AND IT IS SO ORDERED**.

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**May 9, 2017**
**Charleston, South Carolina**

---

[4] An activity needs to meet just one of the three tests outlined in Edens for an employee to be a statutory employee under the SCWCA. Edens, 597 S.E.2d at 868. Since the court finds that Jarman is a statutory employee because the boring work that he conducted through his employment at Razorback was essential to DuPriest's business, it is not necessary for the court to proceed to the second test to make a finding on whether the boring work was routine for DuPriest. DuPriest concedes that Jarman would not be a statutory employer under the third test because DuPriest employees had never performed the boring work that Jarman engaged in.